**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
CASE NO. 16-1051**

**STEPHEN A. PARSON, SR. et al.**

Appellants

v.

**JAMES B. ALCORN, et al.**

Appellees

On appeal from the United States District Court for the
Eastern District of Virginia, Richmond Division
Case No. 3:16CV-13-MHL

**RESPONSE TO MOTION FOR EMERGENCY RELIEF**

Appellees, James B. Alcorn, Clara Belle Wheeler and Singleton T. McAllister (the "Board"), by counsel and pursuant to Fed. R. App. P. 27(a)(3) and L.R. 27(d)(1), for their Response to the Appellants' Emergency Motion for an Injunction Pending Appeal, state as follows:

**BACKGROUND**

The Appellees previously provided a recitation of the underlying factual background to the District Court and do not repeat it here. In short, the Appellants maintain that because the Republican Party of Virginia ("RPV") exercised its statutory right under Va. Code § 24.2-545(A) to impose a requirement that voters in the Republican Presidential primary sign a statement that "My signature below

indicates I am a Republican," the Appellants' constitutional and statutory rights have been violated. The Appellants contend that, *inter alia*, this facially-neutral statement amounts to voter intimidation under the Voting Rights Act, 52 U.S.C. § 10307(b), that it imposes an impermissible discriminatory burden on minority voters under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), and that it violates the Appellants' rights under the First and Fourteenth Amendments to the United States Constitution. Finally, the Appellants contend the Appellees violated certain provisions of Virginia statutory law in implementing the request of the RPV.

The Appellants sought injunctive relief from the District Court, and it held a hearing on the matter on January 13, 2016. The uncontroverted testimony at the hearing, offered by Edgardo Cortés, the Virginia Commissioner of Elections, demonstrated that the voter statements issued by the State Board of Elections following its December 16, 2015 meeting are those offered into evidence as Defendants' Exhibits 3 and 4 at that hearing, not the documents appearing in the Appellants' brief at Page 5. Both documents are captioned as a voter "statement," and both, in accordance with the request from the RPV, provide that in order for the voter to participate in the Republican presidential primary, he must sign the statement.

As set forth to the District Court, these statements do not violate any rights secured to the Appellants such that they cannot demonstrate they are "likely to succeed on the merits" of their Complaint. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The District Court found in its January 14, 2016 Order that the Appellants "did not present evidence sufficient to show a likelihood of success" on any of their claims, a conclusion compelled by the lack of any competent testimony or documentary evidence being offered in support of those claims. *See* January 14, 2016 Order at 2 (Page ID #272). The Appellants' offer nothing more than a recitation of their previous failed arguments in the current Motion, and their request for emergent relief should be denied.

The Appellants posited a similar request to the District Court for emergency relief, and at the filing deadline for this Response, that court had not issued an order on the request.

## STANDARD

Under Fed. R. App. P. 8(a)(2), this Court may grant an injunction pending appeal. However, such a grant amounts to extraordinary relief, and may only be granted in the most unusual circumstances. As pointed out by the Appellees to the District Court, the public interest weighs strongly against last-minute changes to election procedures, which unquestionably would occur were the Court to grant the

3

current Motion. *See Purcell, et al. v. Gonzalez, et al.*, 549 U.S. 1 (2006), *Frank v. Walker*, 574 U.S. ___, 135 S.Ct. 7 (2014) (Alito, J., dissenting, joined by Scalia, J. and Thomas, J.), *Veasey, et al. v. Perry, et al.*, 574 U.S. ___, 135 S.Ct. 9 (2014) (Ginsberg, J., dissenting, joined by Sotomayor, J., and Kagan, J.).

The Supreme Court has stated that injunctive relief pending appeal is only available where "the stay applicant has made a strong showing that he is likely to succeed on the merits", the "applicant will be irreparably injured absent a stay" and by balancing "(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A review of these factors, measured against the allegations in the Appellants' complaint and the record below, quickly reveals the current motion should be denied.

## ARGUMENT

As with their motion for emergency relief filed with the District Court, the Appellants offer nothing more than a restatement of the arguments previously rejected by the District Court. The District Court gave due consideration to the arguments offered by the Plaintiffs in support of their request for injunctive relief, and even afforded them the opportunity for supplemental briefing to demonstrate they would likely succeed on the merits of their Complaint. In order to stay that

determination, the Appellants must meet a higher standard of demonstrating "a strong showing" that it is likely they would succeed. *Nken*, 556 U.S. at 434.

While Plaintiffs allege that the Board's actions violate their right to participate in the Republican Party's presidential primary, the Board has simply acted to fulfill duties assigned by state and federal law. As the Supreme Court has repeatedly concluded, and this Court has specifically instructed Virginia, a state may not ignore a political party's requests concerning selection of the party's nominees, as to do so would violate that political party's associational rights. No action of the Board violates any rights secured to the Appellants under either federal statute or the Constitution, and they cannot show any violation of applicable Virginia law.[1]

### a. The Board has not violated the Voting Rights Act.

### i. The Board has not violated § 11(b) of the Voting Rights Act.

Section 11(b) of the Voting Rights Acts prohibits actions under color of law which "intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any person attempting to vote or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any persons to vote or attempt to vote, or intimidate, threaten, or coerce any person

---

[1]    The Board filed with the District Court a motion to dismiss the case at bar. For the reasons stated therein, not only are the Appellants not entitled to any type of injunctive relief, the case is subject to dismissal in its entirety.

for exercising any powers or duties under section 3(a), 6, 8, 9, 10, or 12(e)."  52 U.S.C. § 10307(b).  While case law on Section 11(b) is limited, courts have concluded that a Section 11(b) claim must show evidence of coercive action taken for the purpose of interfering with the right to vote.  *See*, *e.g.*, *Bershatsky v. Levin*, 99 F.3d 555, 557 (2d Cir. 1996) (finding that "a call to jury duty, to fulfill one's responsibility as a citizen, does not constitute coercion or intimidation within the meaning of [Section 11(b)].''), *U.S. v. Brown*, 494 F. Supp. 2d 440, 477 n. 56 (S.D. Miss. 2007) (publication of party identification of certain voters, although motivated in party by a "racial element" does not constitute impermissible voter intimidation) (citing *U.S. v. McLeod*, 385 F.2d 734, 741 (5th Cir. 1967)).

Appellants have not demonstrated a substantiated threat of voter intimidation or coercion which will occur as a result of the voter statement.  Instead, while the Appellants posit that the form upon which the voter statement is printed "contains clear and misleading threats," Pls.' Br. In Supp. Of Mot. at 8 (Page ID# 29), it is unclear how the form does so.  Appellants take issue with the statement that state law "allows the political party holding the primary to determine requirements for voting in the primary," which they allege is false.  *Id.* at 8-9 (Page ID# 29-30). This allegation is inaccurate, as Va. Code § 24.2-545(A) states "[i]f the party has determined that it will hold a presidential primary, each registered voter of the Commonwealth shall be given an opportunity to participate in the presidential

6

primary of the political party…subject to *requirements determined by the political party* for participation in its presidential primary." (emphasis added).

Appellants further fail to demonstrate that the voter statement form expresses any threat, intimidation, or coercion against the exercise of the franchise. Accordingly, they cannot show a violation under Section 11(b) of the Voting Rights Act.

### ii. The Board has not violated Section 2 of the Voting Rights Act.

Under the Voting Rights Act, a Section 2 vote denial claim must include two elements. First, the challenged practice "must impose a discriminatory burden on members of a protected class," such that members of that class have less opportunity "to participate in the political process and to elect representatives of their choice." *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 240 (4th Cir. 2014) (quotation and citation omitted). "Second, that burden 'must in part be caused or linked to 'social and historical conditions' that have or currently produce discrimination against members of the protected class.'" *Id.*

In considering a Section 2 challenge, a court should review the claim based on the totality of the circumstances. *See id.* at 240, *Frank v. Walker*, 768 F.3d 744, 754 (7th Cir. 2014). The Seventh Circuit has recognized the importance of evaluating Section 2 claims on the totality of the circumstances, as "when the

validity of the state's voting laws depends on disparate impact, as the district court held, it is essential to determine whether there has been such an impact. Otherwise § 2 will dismantle every state's voting apparatus." *Frank v. Walker*, 768 F.3d 744, 754 (7th Cir. 2014).

Appellants provide only speculative assertions that the voter statement will impose a discriminatory burden on members of protected classes, and fail to show that this burden is linked to "'social or historical conditions' that have or currently produce discrimination against members of the protected class." *League of Women Voters of North Carolina*, 769 F.3d at 240. The RPV's voter statement will be provided to all voters wishing to vote in the Republican presidential primary, regardless of race. The Board and the Department of Elections have moved quickly to provide guidance as local election officials prepare for the use of the voter statement, which will assist in avoiding undue voter delay at polling places. *See* Cortés Declaration at ¶6 (describing the Board's guidance to local registrars).

Additionally, while Appellants suggest that the use of the voter statement raises privacy concerns and could lead to voter intimidation through exposure of party preference, Appellants do not describe how this information would otherwise be private in the context of a primary election. Completion of the voter statement is not the only indicia of primary selection necessary at the polling place during the presidential primary election; a voter must indicate whether he wishes to vote in

the Republican or Democratic primary to receive a ballot. Out of practical necessity, voters of all races must do so to receive a ballot and participate in a primary election.

The Appellants' literacy test allegations ignore the assistance available to all voters under Virginia law. As provided by Va. Code § 24.2-649(B), any qualified voter who is unable to read or write may be assisted in voting; such a voter may be assisted by "an officer of election or some other person." Voters who "require assistance in a language other than English" may be assisted by an interpreter throughout the voting process. Va. Code § 24.2-649(C). Accordingly, the voter statement can no more be considered a literacy test than the ballot itself; nor is it a discriminatory burden on members of a protected class.

### b. The Board has not violated Appellants' constitutional rights.

The Supreme Court of the United States has concluded that courts are to evaluate the constitutionality of statutes governing the conduct of elections by using the two-prong balancing test established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and modified in *Burdick v. Takushi*, 504 U.S. 428 (1992). As applied by the High Court in *Burdick*, the *Anderson /Burdick* balancing test requires that:

> a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Appellant seeks to vindicate" against the "precise interests put forward by the State as justifications for the burden imposed by its rule," taking into

consideration "the extent to which those interests make it necessary to burden the Appellant's rights."

*Id.* at 434 (qoutingg *Anderson*, 460 U.S. at 789; citing *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-14 (1986)). Accordingly, in this case Appellants must initially show that the challenged statute represents a burden on their rights. If Appellants make this showing, the Court must then determine whether this burden is justified by an appropriate State interest. In approving the RPV's voter statement, the Board simply complied with mandates established by state law and federal precedent, and does not violate Appellants' constitutional rights under the First and Fourteenth Amendments.

### i. The Board has not violated Appellants' First Amendment Rights.

States are generally entitled to broad deference in regulating elections. *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). However, this deference is limited in the context of a political party's associational rights, and the Supreme Court has "continually stressed that when States regulate parties' internal processes, they must act within limits imposed by the Constitution." *California Democratic Party, et al. v. Jones, et al.*, 530 U.S. 567, 572 (2000). And while states are entitled to determine the time, place, and manner of holding elections, "[t]he power to regulate the time, place, and manner of elections does not justify, without more, the

abridgement of fundamental rights, such as…the freedom of political association."
*Tashjian*, 479 U.S. at 217.

While Appellants assert that the Republican presidential primary must be open to all voters, "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee." *Jones*, 530 U.S. at 575. Indeed, the *Jones* opinion notes that "a nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications." *Id.* at 583 (quoting *Tashjian*, 479 U.S. at 215-16 (*citing Rosario v. Rockefeller*, 410 U.S. 752 (1973), and *Nader v. Schaffer*, 417 F.Supp. 837 (D. Conn. 1976))). Furthermore, the *Jones* Court concluded that "[t]he voter who feels himself disenfranchised should simply join the party. That may put upon him a hard choice, but it is not a state-imposed restriction upon *his* freedom of association, whereas compelling party members to accept his selection of their nominee *is* a state-imposed restriction upon theirs." *Id.* at 584 (emphasis in original).

Virginia also received specific instruction regarding the associational rights of political parties through this Court's decision in *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007). In *Miller*, a political party's local committee challenged Va. Code

§ 24.2-530's[2] requirement that primary elections for General Assembly office be open to all qualified Virginia voters; the committee desired a closed primary. Despite Appellants' arguments to the contrary, this concluded that none of the Board's asserted bases for requiring an open primary constituted "a compelling state interest justifying a severe burden on the Committee's right of association" and directed the Board to adhere to the wishes of the political party *Miller*, 503 F.3d 371.

While Appellants fail to address political parties' associational rights, Appellants nevertheless argue that the voter statement as required by the RPV creates "forced" or "compelled" speech in violation of the First Amendment. However, they cite no law that such a party required statement as a condition of participation in a presidential primary is unconstitutional. In fact, none of the cases cited by Appellant support the proposition that requiring a voter statement for participation in a party primary is forced speech in violation of the First Amendment. *See, e.g., Rumsfeld v. FAIR*, 547 U.S. 47 (2006) (rejecting law school's first amendment challenge to statute that conditioned federal funding on permitting military recruiters the same on-campus access as other recruiters); *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 642 (1943) (holding

---

[2]    It should be noted that Va. Code § 24.2-530 does not establish the voter participation requirements for presidential primaries. Presidential primaries held in Virginia are governed instead by Va. Code §§ 24.2-544, 545.

that local authorities exceeded constitutional authority by enacting a regulation requiring school children to salute the American flag and recite the pledge of allegiance); *Wooley v. Maynard*, 430 U.S. 705 (1977) (upholding challenge to law that prohibited New Hampshire residents from obscuring the state motto "Live free or die" on their license plate); *Agency for International Development v. Alliance for Open Society International*, *Inc.*, 133 S. Ct. 2321 (2013) (upholding challenge to statute that conditioned federal funding on adoption against of policy against prostitution by non-governmental agency receiving the funding).   What case precedent does make clear, however, is that, with respect to political primaries, the associational interests of political parties outweigh the individual's interest in voting in the primary of his or her own choosing without affiliating with the party. *See Jones*, 530 U.S.   at 577 (holding that California's blanket primary unconstitutionally forced political parties to allow voters who refused to associate with the party to participate in the party's primary).

As *Jones* makes clear, voters across the United States are required to "affiliate" or "identify" with a political party in order to vote in that party's presidential primary.  *See*, *e.g.*, *Clingman v. Beaver,* 544 U.S. 581, 584-85 (noting that voters register by party in Oklahoma); Tex. Elec. Code § 172.086 (requiring all primary ballots to carry a pledge that "I am a (insert appropriate political

party).").  Such a requirement has repeatedly been upheld as constitutional by the

United State Supreme Court as

> "[i]n no area is the political association's right to exclude more
> important than in the process of selecting its nominee.  That process
> often determines the party's positions on the most significant public
> policy issues of the day, and even when those positions are
> predetermined it is the nominee who becomes the party's ambassador
> to the general electorate in winning it over to the party's views."

*Jones*, 530 U.S. at 574 ; *see also Clingman*, *supra*, (upholding statute that

prohibited voters registered as members of a party from voting in primaries other

than that of the party in which they are registered).

Appellants' attempts to differentiate the RPV voter statement from the party

registration method chosen by other states is a distinction without a difference.

They fail to explain how the statement required by the RPV as a prerequisite for

participation in the RPV primary imposes any greater burden on the voter than

registration as a party member.  Furthermore, if a voter refuses to sign the RPV

voter statement, he or she is not prohibited from voting in the primary as he or she

may vote in the Democratic primary.  Simply stated, the Appellants have failed to

show that that signing the RPV voter statement is forced speech.

In light of Virginia law, and the federal courts' consensus regarding political

parties' associational rights, it is apparent that the Board has no legal authority to

refuse a party's request to impose participation requirements on voters who wish to

participate in a party's presidential primary election.  Instead, the Board is required

14

by state law and the federal Constitution to accede to such a request, as it has in this case. Accordingly, the Board has not violated Appellants' rights under the First Amendment through implementation of the voter statement, and Appellants' claims will fail under the *Anderson/Burdick* framework.

### ii. The Board has not violated Appellants' Fourteenth Amendment Rights.

Nor has the Board violated Appellants' Fourteenth Amendment rights. In the context of political associational rights, "It is beyond debate that the freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Tashjian*, 479 U.S. at 214.

The *Tashjian* Court further recognized that in some instances, a state regulation may "impose certain burdens upon the protected First and Fourteenth Amendment interests of some individuals, both voters and potential candidates, in order to protect the interests of others." *Tashjian*, 479 U.S. at 224. And when a state regulation imposes only minor burdens, under *Anderson/Burdick* framework "a State's important regulatory interest will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick*, 504 U.S. at 434).

Where the States have no authority to impose a closed primary requirement on political parties, and voters unassociated with a party have no right to

participate in that party's primary, there can be no demonstrable burden on these voters' rights. And in that context, Va. Code § 24.2-545(A), which protects the associational rights of political parties, undoubtedly constitutes an important regulatory interest. Accordingly, Appellants have again failed to demonstrate a burden upon their constitutional rights as required by the *Anderson/Burdick* framework.

### c. The Board has not violated Virginia law.

Section 24.2-545(A) of the Code of Virginia imposes straightforward responsibilities on the Board. Far from violating Virginia law, the Board has simply met its obligations under § 24.2-545(A).

Pursuant to § 24.2-545(A), each political party may determine requirements for participation in its presidential primary. "The requirements may include, *but shall not be limited to*, the signing of a pledge by the voter of his intention to support the party's candidate when offering to vote in the primary." Va. Code § 24.2-545(A) (emphasis added). A plain reading of this statutory language demonstrates that a political party's presidential primary participation requirements are not limited to the pledge described in § 24.2-545(A). Any other reading of this sentence contradicts basic statutory interpretation, as "[a] principal rule of statutory interpretation is that the courts will give statutory language its plain meaning." *Davenport v. Little-Bowser*, 269 Va. 546, 555 (2005) (citing *Jackson v. Fidelity &*

*Deposit Co.*, 269 Va. 303, 313 (2005)).[3]  In the same way, while "the requirements applicable to a party's primary shall be determined at least 90 days prior to the primary date," this 90-day timeline is imposed solely on the party, as only the party may determine its primary participation requirements.  The statute does not require that the Board's certification and approval of these requirements occur more than 90 days prior to the election, and the Board's action in certifying the voter statement on December 16 was consistent with Virginia law.

As Appellants note, "the *party* must *propose* the requirements and the *SBE* must *approve* the requirements."  Pls.' Br. In Supp. Of Mot., at 23 (Page ID# 44) (emphasis in original).  The Republican Party of Virginia provided the Department of Elections with its determined requirements for the presidential primary election; specifically, a voter statement.  The Board of Elections adopted this statement verbatim.  Accordingly, the Board fulfilled its responsibility to approve the requirements proposed by the Republican Party of Virginia.  The Board did not adopt the form that the Republican Party of Virginia proposed; however, 24.2-545(A) does not require the Board to utilize a party's formatting in approving its primary participation requirements.[4]

---

[3]    Because this involves interpretation of Virginia state law, Virginia rules of statutory construction apply.  *See*, *e.g.*, *Priority Auto Group, Inc. v. Ford Motor Co.*, 757 F.3d 137, 140 (4th Cir. 2014) (applying Virginia rules of statutory construction to evaluation of a Virginia statute).

[4]    Nor does the use of the phrase "the political party holding a primary" in the Notice to Voter depicted on p. 24 of Plaintiff's Brief in Support of their Motion for Injunctive Relief to the

17

**II.     Appellants will not suffer irreparable harm in the absence of an injunction.**

As Appellants have failed to demonstrate any right to participate in the Republican presidential primary without completion of the voter statement, they can suffer no harm in the absence of the requested preliminary injunction.

**III.    The balance of hardships does not weigh in Appellants' favor and the requested injunction is not in the public interest.**

As noted previously, the public interest weighs strongly against last-minute changes to election procedures.  *See Purcell, et al. v. Gonzalez, et al.*, 549 U.S. 1 (2006), *Frank v. Walker*, 574 U.S. ___, 135 S.Ct. 7 (2014) (Alito, J., dissenting, joined by Scalia, J. and Thomas, J.), *Veasey, et al. v. Perry, et al.*, 574 U.S. ___, 135 S.Ct. 9 (2014) (Ginsberg, J., dissenting, joined by Sotomayor, J., and Kagan, J.).  As the *Frank* dissent notes, absentee ballots potentially sent out with instructions which no longer apply are of particular concern.  *Frank*, 135 S.Ct. at 7.

The Board will also face significant hardship if the requested preliminary injunction is granted.  The requested injunction would not only require the Board to work with general registrars in each of the Virginia's 133 localities to ensure compliance with this injunction, but would also require the Board to do so before the January 16 UOCAVA deadline for mailing of absentee ballots.  Many ballots have already been issued by local general registrars in an attempt to meet this

District Court represent an ultra vires act.  This notice utilizes only the language contained within Va. Code § 24.2-545(A), which states "[i]f the party has determined that it will *hold* a presidential primary…" (emphasis added).

January 16 deadline. Failure to comply with this deadline would put Virginia in violation of federal law. Failure to meet the January 16 deadline would also harm absentee voters, particularly those military and overseas voters who may not have easy access to updated instructions on completing an absentee ballot in light of any changed participation requirements.[5] When these harms to the Board and the voting public at large, especially Virginians serving the nation overseas, are balanced against the absence of any cognizable harm to the Appellants, it is clear their request for interlocutory relief must be denied.

---

[5]     Virginia law only permits absentee voters to receive replacement ballots in certain limited situations, Va. Code § 24.2-708, and should injunctive relief issue, any absentee voters whose ballots were already in transit would not be eligible for a new ballot on that basis alone. At best, election officials could send an update by mail, notifying these voters of the change in procedure.

## CONCLUSION

For the reasons stated above, the Court should deny the Appellants' motion.

Respectfully submitted,

JAMES B. ALCORN, CLARA BELLE WHEELER and SINGLETON B. McALLISTER

By: /s  J. Duncan Pitchford
        J. Duncan Pitchford, AAG (VSB No. 87065)
        Anna T. Birkenheier, AAG (VSB No. 86035)
        Office of the Virginia Attorney General
        900 East Main Street
        Richmond, Virginia 23219
        Telephone: (804) 371-0977
        Facsimile: (804) 786-2650
        jpitchford@oag.state.va.us

Mark R. Herring
Attorney General

John W. Daniel, II
Deputy Attorney General

Rhodes B. Ritenour
Deputy Attorney General

Heather Hays Lockerman
Senior Assistant Attorney General & Section Chief

J. Duncan Pitchford (VSB No. 87065)*
Assistant Attorney General III

Anna T. Birkenheier (VSB No. 86035)*
Assistant Attorney General

Adam J. Yost
Assistant Attorney General

Office of the Attorney General
Commonwealth of Virginia

900 East Main Street
Richmond, Virginia 23219
(804) 371-0977 – Office
(804) 786-2650 – Facsimile
jpitchford@oag.state.va.us

*Counsel of record for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2016, I electronically filed the foregoing

with the Clerk of court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Chester Smith, Esq.
Smith Law Group, PLLC
293 Independence Boulevard, Suite 231
Virginia Beach, Virginia 23462
Telephone: (757) 490-3181
chucsmit@live.com
*Counsel for Appellants*

Jack R. Wilson, III, Esq.
Jack R. Wilson, III PLC
9401 Courthouse Rd., Suite 204
Chesterfield, Virginia 23832
Telephone: (804) 425-9474
jack@jackwilsonplc.com
*Counsel for Republican Party of Virginia*

    /s  J. Duncan Pitchford
    Anna T. Birkenheier